GARRETT, APPELLEE, *v.* GARRETT, APPELLANT.

(Nos. C-76511 and C-77138—Decided August 17, 1977.)

*Messrs. Jacobs, Kleinman, Martin & Seibel,* for appellee.

*Messrs. Strauss, Troy & Ruehlmann,* and *Mr. Charles G. Atkins,* for appellant.

*Per Curiam.* This cause came to be heard upon the appeal; the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County, Division of Domestic Relations; the transcript of the proceedings; and the assignments of error, the briefs and the arguments of counsel.

On January 15, 1974, appellee (wife) moved out of her marital domicile and filed for divorce. About eight months later she gave birth to a son, Ray. The divorce decree, entered on December 30, 1974, included a finding that Ray was the issue of the marriage. Appellant (husband) had contested that finding before the entry was journalized, but he acceded to the court's insistence that the finding remain undisturbed, to protect the child's interest. The husband's counsel stated for the record, after a conference in chambers, that the parties and the child would be blood-tested when the child was six months old.

Blood grouping tests were performed pursuant to this agreement on April 15, 1975. On June 25, 1975, the husband moved for a "modification" of the divorce decree to show that Ray was not his child. This motion, which was deemed by the trial court and both parties to be a motion for relief from judgment under Civ. R. 60(B), came on for hearing on May 18, 1976.[1] A second series of

---

[1]The Domestic Relations judge disqualified himself and the case was duly assigned to a judge of the General Division who presided at the paternity hearing. The exact date of the transfer is not shown in the record, but apparently it occurred about six months after the entry of the divorce decree.

blood tests had been ordered by the judge, but the reports thereon were not available during the course of the hearing. The husband moved for a two-day continuance, but this motion was denied. After the husband rested his case, the wife's motion for dismissal under Civ. R. 41 was granted. Appellant appealed from this dismissal (case No. C-76511).

Meanwhile, the wife had moved to dismiss the husband's motion for a ''modification'' of the decree, claiming *res judicata*. That motion to dismiss having been denied, the wife cross-appealed (case No. C-76511).

Subsequent to the husband's appeal and wife's cross-appeal, three additional 60(B) motions were filed by the husband in an effort to place the additional medical evidence, now embodied in a deposition, before the court. All three motions were denied. The husband then filed his second appeal (case No. C-77138), claiming error in the denial of his fourth and last 60(B) motion.

## I. *Appeal C-77138*

In this second appeal, considered first for convenience, the husband presents two issues: (1) the court abused its discretion in denying his fourth and last 60(B) motion, and (2) the court erred in finding that it had no jurisdiction to consider the motion.

When an appeal is taken on questions of law, the only matter brought before the reviewing court is the challenged judgment or order. The lower court retains all jurisdiction not inconsistent with that of the appellate court to review, affirm, modify or reverse the final order from which the appeal has been perfected. *In re Kurtzhalz* (1943), 141 Ohio St. 432; 3 Ohio Jurisprudence 2d 253, 254, Appellate Review, Section 352.

The trial court, in the instant case, lacked jurisdiction to rule on the husband's fourth and last 60(B) motion, because that motion raised the same questions which were the subject matter of the first appeal. *State* v. *Watson* (1975), 48 Ohio App. 2d 110; *Vavrina* v. *Greczanik* (1974), 40 Ohio App. 2d 129. The husband did not move the ap-

pellate court to remand the matter to the trial court for a hearing on his motion.[3]

Since the trial court lacked jurisdiction, we need not consider whether it abused its discretion in denying this 60(B) motion.

The assignment of error is not well taken. Appeal No. C-77138 is dismissed for lack of jurisdiction.

## II. *Appeal C-76511*
### A. Wife's Cross-Appeal

The error claimed in this cross-appeal is the trial court's refusal to dismiss the husband's first 60(B) motion. She claims the divorce decree was *res judicata*. We disagree, and find no error, for two reasons.

First, the record fails to disclose any hearing on the issue of paternity during the original divorce proceedings. It does disclose that the husband raised the issue in general terms before the divorce decree was journalized, and that when the judge insisted on a finding that Ray was the "issue of the marriage" for the child's protection, the husband's counsel clearly and openly reserved the option to raise the paternity issue again after the child was six months old. In short, while the decree was final on its face, the paternity issue was clearly reserved on the record.

Second, the relief available under Civ. R. 60(B) is, specifically, relief from "a *final* judgment, order, or proceeding" (emphasis supplied). It provides a means whereby, within strict limitations and under certain conditions, the consequences of *res judicata* may be avoided in the interest of justice. It is precisely because the decree was final that Civ. R. 60(B) was applicable.

---

[3]We note that the Ninth District Court of Appeals has held that where a 60(B) motion is still pending in the trial court, a proper procedure would be for

"* * * the appellant [to] move the appellate court, for good cause, to remand the matter to the trial court for a hearing on the motion to vacate without divesting the appellate court of jurisdiction to hear the pending appeal if it is not rendered moot by the hearing on the motion to vacate." *Majnaric* v. *Majnaric* (1975), 46 Ohio App. 2d 157 at 161.

The husband was entitled to relief under Civ. R. 60 (B); he had filed his motion in timely fashion, and he demonstrated that he had, under clause (2), "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under R. 59(B)," and he had a claim of substance. *Adomeit* v. *Baltimore* (1974), 39 Ohio App. 2d 97; *First National Bank of Clermont County* v. *Blanchard,* unreported, First Appellate District, No. 636, decided June 8, 1977, and cases therein cited.

The record demonstrates that a child's blood-typing is not scientifically reliable until after the child is six months old. At the time of the decree, Ray was only three or four months old and the husband had no available evidence of paternity (or more exactly, *nonpaternity,* since blood-grouping can only prove that a man is not the father).

The husband was not estopped from raising the paternity issue. On the contrary, under the circumstances in this litigation, he was entitled to do so.

The trial court did not abuse its discretion, and it was not in error when it overruled the wife's motion to dismiss based on *res judicata* and proceeded to a hearing on the merits of paternity. We affirm the order of the trial court (May 6, 1976) which overruled this motion to dismiss.

### B. Husband's Appeal

The hearing on the merits of the husband's claim of nonpaternity began on the afternoon of May 18, 1976, and continued on the next afternoon. After repeated denials of his motions for a continuance, the husband rested his case. The hearing was then terminated when the court granted the wife's motion to dismiss on the grounds that the husband had shown no right to relief under Civ. R. 41(B)(2). The assignment of error focuses on this dismissal. We find it to be well taken because (1) the husband had demonstrated a right to relief and (2) the denial of a continuance was, under the circumstances, an abuse of discretion. We reverse and remand for a new hearing.

The court heard testimony about the first blood tests and then dismissed the husband's claim, citing *Rose* v. *Rose* (1968), 16 Ohio App. 2d 123. We conclude that this case was neither properly understood nor properly applied to the evidence. *Rose* reversed a finding that the husband was the father of the child and remanded the case for a new trial as to paternity, because the appellate court held that the finding was against the weight of the evidence. The child had been born on the 224th day after the husband's return from Vietnam; the minimum full term pregnancy is variously calculated, but it was improbable that the husband was the father. As expected, the testimony of the husband conflicted with that of the wife. Under those circumstances, the judge erred when he disregarded clear and convincing evidence excluding the husband as the father, presented in the form of expert testimony of the blood-typings of the husband, the wife and the child. We hold that the judge in the instant case made the same error.

*State, ex rel. Walker,* v. *Clark* (1944), 144 Ohio St. 305, the leading authority, holds that the presumption that a child conceived during marriage is legitimate is not conclusive and may be rebutted by clear and convincing evidence[3] that there was no sexual connection[4] between

[3]*Cross* v. *Ledford* (1954), 161 Ohio St. 469, the leading case in Ohio, defines "clear and convincing evidence," in paragraph 3 of the syllabus:

"Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

We foresee difficulty with this definition arising from the new definition of "reasonable doubt" in the 1974 Criminal Code. R. C. 2901.05(D) states, in effect, that the criminal standard is met when the trier of fact is "firmly convinced of the truth of the,charge." We can distinguish no difference between that standard and the *Walker* standard of "a firm belief or conviction that a fact has been established." The apparent  dilemma can be resolved by keeping "clear and convincing" in the middle ground. It means that the trier of the fact must find the evidence "highly probable" or "highly persuasive" or "of high

the husband and the wife during the time when the child must have been conceived.[5] Expert testimony about "a standard and recognized blood-grouping test," excluding the former husband as the child's father, may be admitted; and while it is not conclusive, it carries weight, along with all the other evidence.[6]

At common law the only admissible evidence of nonpaternity was that it was physically impossible for a husband to have had access to his wife.[7] However, since

---

probative value." This defines a greater burden than a preponderance of the evidence and not beyond a reasonable doubt. McCormick on Evidence 796, Section 340 (2d ed. 1972).

Requiring the evidence to be clear and convincing springs from the potency or weight given by law to the presumption that the child is legitimate if conceived during marriage but born after divorce or separation or both. The presumption is not an evidentiary fact nor a rule of evidence, but a procedural consequence (the child must be found legitimate unless the evidence clearly and convincingly demonstrates to the contrary) which has been established by the courts as a matter of policy. 9 Wigmore on Evidence 288, Section 2491 (3d ed. 1940). Not being "conclusive," it may be rebutted. The principle question in the husband's appeal is whether his evidence can be said to have accomplished that result as a matter of law.

[4]In the body of Justice Zimmerman's opinion the phrase used is "sexual relations." Both phrases refer to sexual intercourse, and since the inquiry is who is the father of the child, we conclude that the evidence relevant to the establishment or denial of parenthood must be what man impregnated this woman. Evidence tending to show who had access or who had nonfruitful intercourse is circumstantial, whereas scientific evidence excluding a tested male would be direct.

[5]The strength of the presumption of legitimacy and the degree of the burden to meet it are determined largely by the circumstances of the woman, as a matter of policy. Thus, if she was not married when the child was conceived and born, the burden of proving the accused male the father is by a preponderance of the evidence. State, ex rel. Steiger, v. Gray (1957), 3 Ohio Op. 2d 394. However, when a man marries a woman knowing she is pregnant, he is conclusively presumed to be the father, and the biological father can not be held for the child's support. Hall v. Rosen (1977), 50 Ohio St. 2d 135.

[6]Walker has been followed in State v. Carter (1963), 175 Ohio St. 98; State, ex rel. Steiger, v. Gray, supra; Langel v. Langel (4th Dist. 1960), 17 Ohio Ops. 2d 63, 175 N. E. 2d 312; and Rose v. Rose, supra.

[7]See paragraph 2 of the syllabus of Powell v. State, ex rel. Fowler (1911), 84 Ohio St. 165, which was expressly overruled by Walker.

*Walker,* the trier of fact may consider scientific evidence about the child's blood type because it derives only from the mother and father.

While we do not agree with Judge Woldman of the Juvenile Court of Cuyahoga County that the scientific laws of blood-grouping are "immutable," as he stated in *State, ex rel. Steiger,* v. *Gray* (1957), 3 Ohio Op. 2d 394, we concur with his opinion that where the testifying expert was qualified, the testing procedures were technologically correct, the results were consistent and the interpretation thereof was sound, this evidence may be considered and may be given weight sufficient to overcome lay testimony to the contrary, including the testimony of the parties. We hold that in view of the inevitable conflict between the parties to the action, the direct interest each has in the outcome, and the normally clandestine nature of illicit sexual relations, there is a need for impartial testimony. Expert testimony about blood-grouping, if properly authenticated, fills that need. It may be given great weight in determining whether the husband is to be excluded as the father of the child, and it may be sufficient in itself to meet the burden of clear and convincing evidence. The introduction of evidence tending to show lack of sexual access is not a prerequisite to the production of such scientific evidence.

In the instant cause, the expert testimony was credible, uncontradicted, not measurably impeached, and of such weight that the trial court's dismissal of the husband's claim at the close of his case in chief was against the manifest weight of the evidence.[8]

---

[8]The combined testimony of the husband's expert witnesses was that the first blood drawings were simultaneously run through five procedures (tests) by two technicians; that their results were identical for purposes of the paternity issue; that two blood-typing experts (from Paul Hoxworth Blood Center at the University of Cincinnati) concurred in the opinion that the husband was not the father of Ray to a clear scientific certainty; that their opinions were based on the results of the Rh test and the Duffy test; that if the husband had been excluded by either one of those tests, their opinions would remain the same because each of the five tests was related to a different blood-grouping system and the presence of a gene or antigen, or the absence

Two policies appear to collide in the instant case. On the one hand, legitimacy should be upheld and a child should not be bastardized except in extraordinary circumstances; on the other hand, the truth should prevail. There is no real collision, however, because the resolution of the issue must be based on the truth. Evidence about the truth of the claimed exceptional circumstances is relevant. Our holding in this case is simply that in the search for truth the trier of fact must give credence to reliable scientific evidence.

The denial of a continuance was, under the circumstances, an abuse of discretion. The court journalized an entry on May 5, 1976, thirteen days before the hearing date, which required the parties to submit to a second drawing of blood. These samples were to be sent to two out-of-town laboratories for blood-typing. The husband's counsel represented that the testimony of these experts would not be repetitive or cumulative but would bring new relevant matter before the court. The wife delayed the taking of blood until May 10th, whereupon the samples

---

thereof, turned up by any one test would constitute a scientifically adequate basis for their respective opinions as to the husband's exclusion; that obtaining the same result from two blood-groupings systems (rather than one) increased the probabilities of the husband's exclusion; and that the inconclusive results in the three other blood-grouping systems had no scientific significance in this inquiry about paternity. Extensive cross-examination failed to dislodge either expert from his or her clearly stated opinion that the husband was excluded. The evidence demonstrated that the technology used was correct, the testing procedures were carefully performed, the results were consistent, and the interpretation was sound and in accordance with established standards. The possibilities brought out on cross-examination (that the test results could have conceivably been explained by aberrations such as gene mutation or a crossing over of genes [recombination], or the unexplained appearance of a new gene never before identified) do not destroy the expert testimony or reduce the proof to less than clear and convincing. For instance, gene mutation could occur only once in a million gene generations. Scientific findings are expressed more precisely in terms of probabilities than in terms of immutability or absolute certainty. This does not change the legal requirement that in the instant case, the proof must be clear and convincing. Nor does it reduce the evidence herein, so far as it was allowed to be presented, to anything less than clear and convincing.

were immediately dispatched to Cleveland and Minneapolis. On May 18th the reports had not been received but were represented by counsl to be in preparation. The Minneapolis report was delayed by the temporary illness of a necessary technician. Counsel requested a two-day continuance in order to allow for the completion of the reports, for the taking of a videotape deposition of the Minneapolis expert and for travel time. These repeated requests were denied. The evidence which the husband was allowed to present covered only the 1976 blood samples, and he was forced to rest his case before he could present any evidence about the 1977 samples.

In general, the granting or denial of a continuance lies within the sound discretion of the trial court. 11 Ohio Jurisprudence 2d 16, Continuances, Section 2. An appellate court will not find error "unless it clearly appears, from all the facts and circumstances, that there has been an abuse of discretion, operating to the prejudice of the party in the final determination of the case." 3 Ohio Jurisprudence 2d 730, Appellate Review, Section 756. See also *State, ex rel. Buck,* v. *McCabe* (1942), 140 Ohio St. 535.

In *Kidd* v. *Cincinnati Transit Co.* (1970), 24 Ohio App. 2d 101, a continuance was sought because the expert witness could not appear to testify in that case, by reason of his father's death out of town. The case was dismissed by the court *sua sponte,* no defendant or defense counsel being present on the trial date. Despite the fact that continuances had been repeatedly granted prior to the day of dismissal, the appellate court held that the dismissal constituted a gross abuse of discretion.

In the instant case, we hold that the dismissal was, under the circumstances, an abuse of discretion.

The single assignment of error is well taken. We reverse and remand for a new hearing on the merits of the husband's claim of nonpaternity.

*Judgment reversed and cause remanded.*

BETTMAN, P. J., CASTLE and BLACK, JJ., concur.