IN RE MANCINI: RIMELSPACH, APPELLANT, *v.* MANCINI, APPELLEE.

(No. 3135—Decided July 8, 1981.)

*Mr. Andrew R. Morse,* for appellant Paul Rimelspach.

*Mr. David C. Long,* for appellee Nicholas Mancini.

MAHONEY, P. J. Appellant, Paul Rimelspach, appeals the lower court's judgment, which dismissed his application under R.C. 2105.18 to be determined the natural father of Christina L. Mancini on the grounds that the court lacked jurisdiction to decide the matter. We affirm on different grounds.

### Facts

Toni Mancini, now Toni Rimelspach (mother), married Nicholas D. Mancini (first husband), the appellee in this appeal, on August 8, 1970. Christina Mancini was born on June 3, 1976, while the mother and her first husband were still legally married. The mother and the first husband were divorced by a judgment entry of December 30, 1976. The mother's complaint for divorce, and the domestic relations court's findings, both stated that Christina was born as issue of this marriage to the first husband. The court granted custody of Christina and another male child, whose paternity is not questioned, to the mother and ordered the first husband to pay the sum of $22.50 per week as support for Christina.

The mother married Paul Rimelspach

(second husband) on August 14, 1980. On August 29, 1980, the second husband filed an application, pursuant to R.C. 2105.18, alleging that he is the natural father of Christina and asking that the Probate Court of Lorain County enter a finding to that effect. On that same date the court ordered that Nicholas Mancini, the first husband, be notified of the application. The first husband entered a special appearance in order to contest the court's jurisdiction on the ground that the prior divorce decree was a binding determination of parentage. On that basis, the court granted the first husband's motion to dismiss the second husband's application. The court also concluded that R.C. 2105.18 was intended only to permit illegitimate children to inherit from their biological father.

## Discussion

### Assignment of Error I

"The doctrine of res judicata does not bar a second husband in his application for the legitimazation (*sic*) of a minor child, pursuant to Ohio Revised Code § 2105.18, from litigating and determining the identity of the child's natural father, even though a prior divorce decree states the child is an issue of that marriage. Since neither the second husband nor the child were parties to the divorce proceeding, the lack of similar parties and similar causes of action between the two proceedings requires that the res judicata doctrine is not applicable."

Under appellant's first assignment of error we limit our analysis to the applicability of the doctrine of *res judicata* to the second husband's application. The probate court judgment entry reads, in part:

"4. That the subject of this Application is the child Christina and as to her the determination of the Lorain County Court of Common Pleas, Domestic Relations Division, that she is the issue of the marriage of Nicholas D. Mancini and Toni Mancini, is binding upon this Court, and

that in view of that fact this Court does not have jurisdiction to entertain an application or to find that Paul Rimelspach is the father of Christina."

The essence of this conclusion is that the prior divorce decree is *res judicata* as to any action by the second husband challenging the paternity of Christina.

The Ohio Supreme Court has continually held that there must be an identity of parties or persons in privity with the parties and an identity of issues for a decree to be *res judicata* or to operate as estoppel. *Whitehead* v. *Genl. Tel. Co.* (1969), 20 Ohio St. 2d 108, 114 [49 O.O.2d 435]; *Johnson* v. *Norman* (1981), 66 Ohio St. 2d 186, 190 [20 O.O.3d 196]. In that portion of the syllabus applicable to the finding in the divorce decree at issue here, the *Whitehead* court stated:

"2. A final judgment or decree in an action does not bar a subsequent action where the causes of action are not the same, even though each action relates to the same subject matter. However, a point of law or a fact which was actually and directly in issue in the former action, and was there passed upon and determined by a court of competent jurisdiction, may not be drawn in question in a subsequent action between the same parties or their privies. The prior judgment estops a party, or a person in privity with him, from subsequently relitigating the identical issue raised in the prior action. (Paragraphs Nos. 2 and 3 of syllabus of *Norwood* v. *McDonald*, 142 Ohio St. 299 [27 O.O. 240], approved and followed.)"

Clearly, any attempt by the mother or the first husband to relitigate the issue of Christina's parentage could be barred by *res judicata* (collateral estoppel) predicated on the divorce decree. However, nothing indicates that the second husband was in any fashion a party or in privity with a party to the divorce action between the mother and her first husband. Therefore, the probate court erred in finding the prior divorce decree a bar to the second husband's application, which,

in effect, challenged Christina's paternal parentage.

We note that three other jurisdictions have specifically dealt with the issue of the finality of a finding of paternity in a divorce decree. *State, ex rel. Bentley,* v. *Frenger* (1930), 158 Wash. 683, 291 P. 1089; *A.B.* v. *C.D.* (1971), 150 Ind. App. 535, 277 N.E. 2d 599; *O.F.L.* v. *M.R.R.* (Mo. App., 1974), 518 S.W. 2d 113. In all three cases the courts held that a finding that the subject child was born as issue of the marriage is not *res judicata* as to anyone not a party to the divorce. In particular, the court in *A.B.* v. *C.D., supra* (150 Ind. App.), at 560, declared:

"* * * The finding that the child 'was born as the issue of this marriage' amounts to no more than a finding that he was born to the wife during the marriage, a fact not in dispute in the instant case, nor in the divorce case, so far as the record here reveals. * * *"

This statement is equally apposite in the instant appeal.

### Assignment of Error II

"Sec. 2105.18 of the Ohio Revised Code must not be restrictively construed but rather liberally interpreted to permit any man, who marries the mother of the child, to legitimatize the birth of the child and be recognized as the natural father, irrespective of whether the child was born during the marriage of the mother to another person."

Having concluded that the prior divorce decree between the first husband and the mother is not *res judicata* as to the second husband, regarding the issue of paternity, we are faced with the issue of whether appellant can utilize R.C. 2105.18 as a vehicle for determining paternal parentage. The literal wording of the statute appears to provide an individual in appellant's position, who claims to be the natural father, with a right of action to challenge a child's paternity. The second paragraph of R.C. 2105.18 provides:

"The natural father of a child may file an application in the probate court of the county in which he resides, in the county in which the child resides, or the county in which the child was born, acknowledging that the child is his, and upon consent of the mother, or if she is deceased or incompetent, or has surrendered custody, upon the consent of the person or agency having custody of the child, or of a court having jurisdiction over the child's custody, the probate court, if satisfied that the applicant is the natural father, and that establishment of the relationship is for the best interest of the child, shall enter the finding of fact upon its journal, and thereafter the child is the child of the applicant, as though born to him in lawful wedlock."

We do not deny that the second husband has complied with the requisites of the quoted provision. We find however, that this section was not intended to provide an individual the means to resolve the issue of paternity.

R.C. 2105.18 appears within R.C. Chapter 2105 entitled "Descent and Distribution." As such the purpose of the second paragraph of R.C. 2105.18 is not to provide for paternity proceedings but to provide an avenue for determining heirship. In making such a determination the statutory scheme of R.C. Chapter 2105 distinguishes between the rights of legitimate and illegitimate children. Therefore, a necessary concomitant to a determination of whether a child inherits through or from the father, or *vice versa,* in accordance with the descent and distribution statutes, is a showing that the child is legitimate. As suggested by the Supreme Court in *Comer* v. *Comer* (1963), 175 Ohio St. 313, 316 [25 O.O.2d 182], the second paragraph is a method of proving natural fatherhood when the putative father and the mother of the child intermarry.

The second husband argues that case law and the wording of the statute allow for legitimation of a child born to a

woman who was married to another at the time of the birth of the child. It is clear that the revision of R.C. 2105.18 in 1976 deleted the following phrase from the 1953 version of this section: "by a woman unmarried at the time of the birth of such child." Therefore, the current R.C. 2105.18, which was in effect at the time relevant to this case, does not expressly restrict legitimation to children born to an unmarried woman.

However, the procedure established in the second paragraph of R.C. 2105.18 presupposes that the child is illegitimate and thus, provides a mode for rectifying this status.

"A child conceived during the existence of a lawful marital relation is presumed in law to be legitimate — a procreation of the husband and wife." *State, ex rel. Walker,* v. *Clark,* (1944), 144 Ohio St. 305 [29 O.O. 450], paragraph two of the syllabus.

See, also, *State* v. *Carter* (1963), 175 Ohio St. 98 [31 O.O. 322]; *Garrett* v. *Garrett* (1977), 54 Ohio App. 2d 25 [8 O.O.3d 41]. In light of this presumption Christina Mancini was already the legitimate child of her mother and the first husband. Therefore, to provide the second husband the wherewithal to legitimate the child again would be an affront to the purpose of this statute.

This court must interpret and apply validly enacted statutes and amendments thereto, so as to give them effect. In light of our determination that appellant's action is not properly brought under R.C. 2105.18, we conclude that the 1976 amendment to this section was intended to remove superfluous language from the statute. Since R.C. 2105.18 was meant to apply to legitimation of an illegitimate child, the phrase "a child by a woman unmarried at the time of the birth of such child" adds nothing to the statutory purpose of R.C. 2105.18. This excluded language merely stated the definition of an illegitimate child. Therefore, the present form of R.C. 2105.18 does not provide the second husband the means for challenging Christina's paternity.

Assuming, *arguendo,* that the second husband's action was allowed to proceed to a final determination of whether he was the natural father, that judgment would have no binding effect on the child or the first husband. It would bind only the second husband and, arguably, the mother because of her consent. As evidenced by his motion to dismiss in the trial court, the first husband does not concede that the second husband is the natural father of Christina. Neither has he relinquished any of his paternal rights or obligations.

As noted above, the law, under the circumstances before us, presumes the first husband to be the father of the child. *State, ex rel. Walker,* v. *Clark, supra; State* v. *Carter, supra; Garrett* v. *Garrett, supra.* This strong presumption can be overcome only by a showing of clear and convincing evidence to the contrary. *Ibid.* Christina's paternal parentage could be properly challenged in an adversary proceeding, such as a declaratory judgment action, where all parties with an interest in the suit are represented. See *A.B.* v. *C.D., supra,* and *O.F.L.* v. *M.R.R., supra.* In this fashion the question of the child's paternity could be settled. R.C. 2105.18 was not intended to be the vehicle for this resolution. Moreover, the section makes no provision for an adversary proceeding, without which appellant's application could not be adequately resolved.

### Summary

We sustain the first assignment of error on the issue of *res judicata.* We overrule the second assignment of error and therefore, affirm the dismissal of appellant's application in the probate court on the grounds stated herein.

*Judgment affirmed.*

BELL, J., concurs.

QUILLIN, J., concurs in part and dissents in part.

QUILLIN, J., concurring in part and dissenting in part. I concur in the court's disposition of Assignment of Error no. I, but must dissent from its disposition of Assignment of Error no. II.

The majority, in effect, is saying that under no circumstances can a natural father of a child born to a woman who is married to another at the time of the birth of the child, utilize R.C. 2105.18 to establish that the child is his issue. I believe this conclusion is in error for several reasons, most important of which is the plain reading of the statute.

Suppose the first husband is deceased, missing or otherwise unavailable, *e.g., Succession of Mitchell* (La. 1975), 323 So. 2d 451. There is nothing sinister about using a statute facially applicable for this very purpose. If there is a concern that the statute might be abused, it should be remembered that the probate court must find that: (1) the mother consents, (2) the applicant is in fact the natural father, and (3) the establishment of the relationship is for the best interest of the child.

Although the majority is laudably troubled by public policy considerations, such considerations lie primarily within the province of the General Assembly. When the General Assembly amended the statute in 1976 to broaden its application to include births by married as well as unmarried women, it was a policy statement which binds the court absent constitutional infirmities, none of which is suggested.

The observation by the majority that a finding under the statute might not bind parties not privy to the proceedings goes more to the utility of the statute than to its validity or applicability to the instant facts.