OPINION *Page 2 
{¶ 1} Defendant-appellant Erik J. Sipes appeals his conviction and sentence entered in the Delaware County Court of Common Pleas, following a jury trial, on one count of sexual battery.
 {¶ 2} Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} In May, 2007, Christy Norris, was working for Acosta, where she met the Appellant, Erik J. Sipes, (T. at 131-134, 204). In August, 2007, Appellant asked Ms. Norris out on a date. (T. at 137, 208, 245). On August 18, 2007, Ms. Norris drove to Delaware from her home in Reynoldsburg and met Appellant at the Marathon gas station on 36/37. (T. at 139-140, 209). She then followed him to his home on Pennick Avenue in Delaware. (T. at 140, 210).
 {¶ 4} Once at Appellant's home, Ms. Norris drank about three-quarters of a Smirnoff's wine cooler and Appellant drank three beers. (T. 143, 211). The two of them then left Appellant's house and went to the Old Bag of Nails Pub in Delaware. Id. As they were leaving Ms. Norris told the defendant she wasn't feeling well, and the defendant told her she probably just needed something to eat (T. at 144, 246). At the pub, Appellant ordered a beer for himself and a Jack Daniels and Coke for Ms. Norris. (T. at 144-145, 213-214). Appellant instructed the bartender to make Ms. Norris' drinks strong. (T. at 215, 259. Instead of having dinner, Appellant ordered nachos and ate most of them himself. (T. at 146, 219).
 {¶ 5} After Ms. Norris had two drinks and Appellant had three beers, they left the Old Bag of Nails Pub and went to the Red Rock Cafe. (T. at 148, 219, 220). Again, *Page 3 
Ms. Norris told Appellant that she felt queasy. (T. at 246). At the Red Rock Café, Ms. Norris asked Appellant to escort her to the bathroom because she wasn't walking too well and she didn't feel safe. (T. at 148-149). Appellant ordered drinks for him and Ms. Norris and again told the bartender to "make `em strong." (T. at 223, 259-60). Ms Norris stated that she remembers nothing of their time at the Red Rock Cafe after she got up to dance and Appellant yelled at her, stating that she was embarrassing him and drawing attention to the two of them. (T. at 150).
 {¶ 6} The next thing Ms. Norris remembers is that she couldn't open her eyes, her body and head felt heavy. (T. at 152). She said that she could feel Appellant on top of her, and moving inside of her, but that she could not react. Id. She claims that the next thing she remembers is waking up without any clothes on Sunday morning in Appellant's bed when his alarm went off at 6:00 or 6:30 a.m. (T. at 152, 235-236). Ms. Norris asked Appellant what was going on and he told her she needed to go home. (T. 152). At that time, Ms. Norris went to the bathroom, became sick, cleaned up a bit and drove home. (T. at 153-155). She stated that she told Appellant that she did not think she should drive home, in response to which he gave her two Advil and told her she would be fine. Id.
 {¶ 7} Over the course of the next four or five days, Ms. Norris attempted to have a discussion with Appellant to find out what happened on August 18, 2007. He refused to talk to her about that night except to tell her it was a mistake. (T. at 156, 158).
 {¶ 8} On August 24, 2008, the Friday after their Saturday date, Ms. Norris contacted the police to file a complaint. (T. at 161). Detective Juston Herning interviewed *Page 4 
Ms. Norris and then on August 27, 2008, he had Appellant come into the police station for questioning. (T. at 184). In response to Detective Herning's questions about what happened on August 18, 2007, Appellant admitted to having oral sex and intercourse with Ms. Norris on August 18-19, 2007. (T. at 229-234, 244, 255). Appellant told Det. Herning that Ms. Norris consumed eleven (11) Jack Daniels and Cokes that evening. (T. at 245). He stated that her speech was slurred, she was stumbling and having trouble walking, that he helped her to her car, that he should have "shut her off", and that she puked three or four times at his house. (T. at 247-248, 257, 263). He further told Det. Herning that Christy told him she was queasy, that she was drunk and stumbling and had slurred speech. (T. at 260). He stated that she wasn't able to follow what he was talking about. Id. Appellant told Detective Herning that Ms. Norris was "wasted" and "drunk". (T. at 261). Appellant stated that on a scale of 1 to 10 with 10 being the worst, Ms. Norris was a 12. (T. at 260-261). Appellant told Det. Herning that he and Ms. Norris engaged in both oral sex and vaginal intercourse. (T. at 244). Appellant then stated that maybe they did not have intercourse because he pulled out and ejaculated instead of inside of her. He stated approximately three to four different times while they were having intercourse, Ms. Norris had to get up and vomit. (T. at 231-234, 263). During the interview Appellant also told Det. Herning that it was possible that Ms. Norris may have passed out while they were having intercourse. This interview was digitally recorded and was admitted at trial as Exhibit 1.
 {¶ 9} Appellant was charged with one count of Rape, in violation of R.C. § 2907.02(A)(1)(c) and one count of Sexual Battery, in violation of R.C. § 2907.03(A)(2). *Page 5 
Appellant was arraigned on October 31, 2007. At arraignment the case was set for trial on January 10, 2008.
 {¶ 10} On January 7, 2008 counsel for defendant requested a continuance, which was denied after a meeting in chambers between the Judge and counsel for the parties.
 {¶ 11} On January 10, 2008, a jury was selected and the trial commenced.
 {¶ 12} The jury began deliberating on January 11, 2008, and after deliberations came back with a verdict of not guilty on the rape and a verdict of guilty on the sexual battery charge.
 {¶ 13} On March 17, 2008, the trial court sentenced Appellant to two (2) years in prison on the sexual battery count. Appellant was also advised of his duty to register as a sexual offender.
 {¶ 14} Appellant now raises the following assignments of error on appeal:
 ASSIGNMENTS OF ERROR {¶ 15} "I. APPELLANT'S CONVICTION FOR SEXUAL BATTERY WAS NOT SUPPORTED BY SUFFICIENT, CREDIBLE EVIDENCE.
 {¶ 16} "II. APPELLANT'S CONVICTION FOR SEXUAL BATTERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 17} "III. APPELLANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND A RIGHT TO A FAIR TRIAL.
 {¶ 18} "IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY REFUSING TO GRANT APPELLANT A CONTINUANCE OF THE JURY TRIAL." *Page 6 
 I., II. {¶ 19} In his first and second assignments of error, Appellant argues that his conviction was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 20} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (stating, "sufficiency is the test of adequacy"); State v. Jenks (1991), 61 Ohio St.3d 259 at 273,574 N.E.2d 492 at 503. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560; Jenks, 61 Ohio St.3d at 273, 574 N.E.2d at 503.
 {¶ 21} Weight of the evidence addresses the evidence's effect of inducing belief. State v. Wilson, 713 Ohio St.3d 382, 387-88,2007-Ohio-2202 at ¶ 25-26, 865 N.E.2d 1264, 1269-1270. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? Even though there may be sufficient evidence to support a conviction, a reviewing court can still re-weigh the evidence and reverse a lower court's holdings." State v. Wilson, supra. However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St.3d at 387, *Page 7 678 N.E.2d 541. (Quoting State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, supra.
 {¶ 22} Employing the above standard, we believe the State presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that Appellant committed the offense of sexual battery.
 {¶ 23} In the present case, Appellant was charged with and convicted of sexual battery, in violation of R.C. 2907.03(A)(2), which provides in relevant part:
 {¶ 24} "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * *
 {¶ 25} "(2) [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."
 {¶ 26} "Sexual conduct" is defined as "vaginal intercourse between a male and a female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 27} Appellant admitted that he and the victim engaged in sexual conduct, i.e. both oral and vaginal intercourse. Accordingly, with regard to his conviction for sexual battery, Appellant's only argument asserts that the State failed to present any evidence that he knew the victim in this case was "substantially impaired" when he engaged in *Page 8 
sexual conduct with her. Appellant contends that the sexual conduct was knowing and consensual and that the State failed to present any evidence to the contrary, amounting to a failure to establish all of the elements essential for a conviction on sexual battery.
 {¶ 28} The Ohio Supreme Court has held that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." State v.Zeh (1987), 31 Ohio St.3d 99, 104, 509 N.E.2d 414. "`Substantial impairment' need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct." State v. Brady, Cuyahoga App. No. 87854, 2007-Ohio-1453
at ¶ 78; State v. Jordan, Harrison App. No. 06 HA 586, 2007-Ohio-3333
at ¶ 97; State v. Hillock, 7th Dist. No. 02-538-CA, 2002-Ohio-6897, at ¶ 21. However, although Zeh touched on the issue of what constituted "substantial impairment," its holding was limited to instructing when the defense could ask the court to bar the state from utilizing evidence of the contested mental condition of a victim-potential witness.Id. at 105, 509 N.E.2d 414. State v. Hillock, Harrison App. No. 02-538-CA, 2002-Ohio-6897 at ¶ 24.
 {¶ 29} A review of Ohio case law on the offense of sexual battery reveals that Ohio courts have consistently found the essential elements to be established under circumstances similar to those presented in this case. State v. Prater, 12th Dist. No. CA2006-01-017, 2006-Ohio-7028
at ¶ 17. *Page 9 
 {¶ 30} In In re Thomas, Cuyahoga App. Nos. 83579, 83580,2004-Ohio-6415, the Eighth Appellate District found sufficient evidence of substantial impairment where a victim of sexual battery testified that she had consumed alcohol throughout the evening and that she had passed out when the appellant engaged in sexual intercourse with her. Other witnesses corroborated the victim's testimony and stated that they had observed the victim to be "visibly intoxicated," "stumbling," and that she had fallen more than once during the evening. Id. at ¶ 33. The court held that the State had presented sufficient evidence "to allow the jury to find, beyond a reasonable doubt, that [the victim] was substantially impaired and that appellant knowingly committed sexual battery." Id. at ¶ 34. State v. Prater, supra at ¶ 17.
 {¶ 31} Similarly, in State v. Lilley, Stark App. No. 2003CA00073,2003-Ohio-6792, this Court found sufficient evidence of substantial impairment where the victim testified that she had consumed three vodka drinks and vomited during the evening. The victim testified that she went to lie down after becoming sick and that she later awoke to find Appellant engaging in sexual intercourse with her. Id. at ¶ 4-7. This Court held that the evidence was sufficient to support Appellant's conviction for sexual battery and that the jury's verdict was not against the manifest weight of the evidence. Id. at ¶ 63; State v.Prater, supra at ¶ 18.
 {¶ 32} In State v. Prater, supra, the Twelfth Appellate Dist. found sufficient evidence of substantial impairment where the victim testified that she consumed multiple alcoholic beverages during the evening and that she also took a "hit" off of a marijuana pipe. "She remembered very little of what happened after that point. She stated that she remembered Parks asking her if she wanted him to leave, and that she *Page 10 
told him to stay, explaining that she did so because she did not trust appellant. She next remembered hearing appellant tell Parks that he was `going to have sex with [her]' and that he had a condom. E.N. testified that she `wasn't completely passed out' but that she could only remember hearing things and could not recall seeing anything or remember anything happening to her body." Id. at 5. Additional witnesses from the party also testified, describing E.N. as "really drunk" and "not herself," "staggering" and "stumbling" throughout the evening. Id. at 19.
 {¶ 33} In the case at bar, the State presented the testimony of the victim, Detective Herning and Appellant. This testimony, as set forth in detail above in the statement of the facts, established that Ms. Norris' ability to apprise or control the situation was, in fact, "substantially impaired" when Appellant engaged in sexual conduct with her, and that he knew she was "substantially impaired".
 {¶ 34} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Appellant had committed the crime of sexual battery.
 {¶ 35} We hold, therefore, that the State met its burden of production regarding each element of the crime of sexual battery and, accordingly, there was sufficient evidence to support Appellant's conviction.
 {¶ 36} Appellant argues that his trial testimony supported his position that he had no way of knowing that Ms. Norris was "substantially impaired". He testified that while he and Ms. Norris were at the Red Rock Café, they played a video game for about 30 to 45 minutes which required thought and mental processing and that she beat him several times. (T. at 223-227). He also testified that Ms. Norris danced for about five (5) *Page 11 
to (8) minutes while they were at the bar and that they talked and made jokes during that time. Id. He further testified that Ms. Norris was able to walk to the car, albeit with some assistance from him. Id. Appellant stated that once the two of them arrived at his house, Ms. Norris took off her boots and jeans by herself and he helped her remove her shirt and bra. (T. 229-232). He also argued that his own intoxication hindered his ability to appreciate the level of Ms. Norris' impairment. He did admit that she was drunk and that she vomited at least 3 to 4 times while they were having sex. (T. at 231-234, 263).
 {¶ 37} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267, 140 L.Ed.2d 413.
 {¶ 38} Although Appellant argued that the victim consented to the sexual relations, and further, that the victim's ability to resist or consent was not substantially impaired, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183.
 {¶ 39} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the *Page 12 
inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP1238, 2003-Ohio-2889, citingState v. Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
 {¶ 40} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the conviction. The jury did not create a manifest injustice by concluding that Appellant was guilty of the crime charged in the indictment.
 {¶ 41} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 42} Appellant's first and second assignments of error are overruled.
 III. {¶ 43} In his third assignment of error, Appellant argues his trial counsel was ineffective. We disagree.
 {¶ 44} Appellant argues that his trial counsel was ineffective because he failed to question a juror concerning the detail of his wife's murder, because he failed to cross-examine *Page 13 
Detective Herning, and because he failed to call character witnesses or co-worker's on Appellant's behalf.
 {¶ 45} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to Appellant. The second prong is whether Appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L .Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 46} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 47} In order to warrant a reversal, Appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable.Strickland 466 U.S. at 687; 694, 104 S.Ct. at 2064; 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.; Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra;Bradley, supra. *Page 14 
 {¶ 48} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 49} With regard to the questioning of the juror, Appellant argues that once said juror advised the court that his wife had been murdered and possibly raped, that his counsel should have questioned him about whether the defendant in his wife's case had been convicted of murder and/or rape, what the defendant's sentence was, what the juror's impressions were of the judicial system, and how his wife's death impacted him.
 {¶ 50} Upon review of the transcript, we find that said juror was questioned extensively, outside of the presence of the other jurors, by both the trial court and the prosecutor. In response to the court's inquiries, the juror advised the court that his wife had been murdered in Idaho 20 years ago, that rape had been suspected as part of the murder and that the defendant was never convicted. (T. at 73-76). The juror assured the court that he believed he could be fair, objective and impartial, regardless of such history and that he could listen to the testimony and independently decide guilt or innocence in this particular case. (T. at 32, 75-76).
 {¶ 51} As said juror was adequately questioned by both the trial court and the prosecutor concerning his ability to be objective and fair, we do not find that trial counsel was ineffective in failing to question said juror further.
 {¶ 52} Appellant also argues that his counsel was ineffective in failing to cross-examine Detective Herning. He argues that his trial counsel should have questioned *Page 15 
the detective about Appellant being nervous during the interview and further should have attempted to reconcile or explain the inconsistencies in Appellant's statements to Detective Herning and his trial testimony.
 {¶ 53} An attorney's decision whether to cross-examine a witness falls under the rubric of trial strategy, and as such, an appellate court will not second-guess the attorney's decision, even if the decision was debatable. State v. Fritz, 3d Dist. No. 13-06-39, 2007-Ohio-3138, ¶ 39, citing State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396,794 N.E.2d 27; State v. Clayton (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189. Appellant's trial counsel could have had a reasonable trial strategy in not cross-examining Detective Herning by not wanting to draw attention to the inconsistencies in Appellant's statements. Moreover, he was able to address Appellant's nervousness during the interview and attempt to address those inconsistencies during his direct and re-direct of Appellant. We therefore find that such failure to cross-examine Det. Herning did not amount to deficient conduct.
 {¶ 54} Ohio attorneys enjoy a strong presumption of competence, and "tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance." Id., citingState v. Sallie, 81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267;State v. Carter (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965. "Instead, the errors complained of must amount to a substantial violation of defense counsel's essential duties to his client." Id., citing State v. Bradley (1989), 42 Ohio St.3d 136, 141, 538 N.E.2d 373, quoting State v. Lytle (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 623. *Page 16 
 {¶ 55} As stated above, in order to prove that he was prejudiced by counsel's actions, Appellant must demonstrate that "there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different." Id. at ¶ 6, citingStrickland, at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." State v. Loza (1994), 71 Ohio St.3d 61, 83, 641 N.E .2d 1082, citing Strickland, at 697. Debatable trial tactics do not establish ineffective assistance of counsel. State v. Linville, Franklin App. No. 04AP-917, 2005-Ohio-3150, at ¶ 31.
 {¶ 56} Additionally, Appellant has failed to show how the failure to call character witnesses in this matter would have changed the outcome of the trial. This case was won or lost based on what the jury believed occurred on the night in question, not what the relationship was between Appellant and Ms. Norris before that night, or even after.
 {¶ 57} Upon review of Appellant's arguments that his counsel was unprepared for trial, we find no evidence in the record to support this position.
 {¶ 58} None of the instances raised by Appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record Appellant cites in support of his claim that he was denied effective assistance of counsel, we find Appellant was not prejudiced by defense counsel's representation of him. The results of the trial were not unreliable, nor were the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 59} Based on the foregoing, Appellant's third assignment of error is overruled. *Page 17 
 IV. {¶ 60} In his fourth assignment of error, Appellant argues that the trial court erred in denying his motion for a continuance of the trial. We disagree.
 {¶ 61} Appellant argues that the continuance in this matter was requested to allow time for certain e-mail communications between Appellant and Ms. Norris to be recovered and because he had been unable to locate a witness who had spoken with Ms. Norris during her date with Appellant.
 {¶ 62} "The decision whether to grant a continuance is within the sound discretion of the trial court." Hartt v. Munobe (1993),67 Ohio St.3d 3, 9, 615 N.E.2d 617. Consequently, "[a]n appellate court will not find error `unless it clearly appears, from all the facts and circumstances, that there has been an abuse of discretion, operating to the prejudice of the party in the final determination of the case.'"Garrett v. Garrett (1977), 54 Ohio App.2d 25, 34, 374 N.E.2d 654.
 {¶ 63} In ruling upon a motion for a continuance, "[t]he trial court balances the court's interest in controlling its docket and the public's interest in an efficient judicial system with the possibility of prejudice to the defendant." Sayre v. Hoelzle-Sayre (1994),100 Ohio App.3d 203, 208, 653 N.E.2d 712, citing State v. Unger (1981),67 Ohio St.2d 65, 67, 423 N.E.2d 1078. The trial court may consider factors such as the length of the delay requested, prior requests for continuances, the legitimacy of the request for a continuance, whether the movant contributed to the circumstances which gave rise to the request for a continuance, inconvenience to the parties, counsel, and the court, and "`other relevant factors, depending on the unique facts of each case.'" Id., Citing Unger at 67-68, 423 N.E.2d 1078. *Page 18 
 {¶ 64} Upon review, we do not find Appellant was prejudiced by the trial court's denial of the requested continuance. Ms. Norris and Appellant both testified to the content of the instant messages which were sent between the two of them.
 {¶ 65} With regard to the witness who Appellant failed to locate, Appellant has failed to show how he was prejudiced by such witness' absence at trial.
 {¶ 66} Based on the foregoing, we find that the trial court did not abuse its discretion in denying Appellant's motion for continuance in this matter.
 {¶ 67} Appellant's fourth assignment of error is overruled.
 {¶ 68} For the foregoing reason, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.
 Wise, J. Hoffman, P. J., and Gwin, J., concur. *Page 19 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.
 Costs assessed to Appellant. *Page 1