OPINION
{¶ 1} Defendant-appellant, Thomas Lee Prater, Jr., appeals from his convictions and sentence in the Butler County Court of Common Pleas for one count of sexual battery and one count of tampering with evidence. For the reasons outlined below, we affirm appellant's convictions but reverse the sentence of the trial court and remand for resentencing.
 {¶ 2} On August 31, 2005, appellant was indicted on one count of sexual battery in violation of R.C. 2907.03(A)(2), and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), both felonies of the third degree. Appellant pled not guilty and the case proceeded to a jury trial, held October 25 through October 28, 2005. The evidence produced at trial established that on the evening of July 24, 2005, appellant was attending a party at the home of a friend, Travis Parks (hereinafter "Parks").[1] Parks had also invited the victim in this case, E.N., age seventeen.
 {¶ 3} The state's first witness at trial, E.N., testified that she went to Parks' house after attending a teen dance club, and that she arrived there at approximately 1:00 a.m. Many people at the party were drinking. Approximately thirty minutes to an hour after she arrived, Parks offered E.N. a drink of an alcoholic beverage called a "99 Berries," and she drank it. A short time later, appellant sat next to her and offered to share a bottle of an alcoholic beverage called "Bacardi O," and she and appellant drank from the bottle.
 {¶ 4} E.N. testified that she was "almost drunk" and that she had "never [drunk] that much alcohol." A short time later, E.N. went outside and joined a group of people where she drank a beer and took a "hit" off of a marijuana pipe. E.N. stated she was feeling "funny and carefree." E.N. testified that when she noticed that Parks had an above-ground swimming pool, she encouraged people to go swimming. Wearing only their underwear, E.N., appellant, and others then got into the swimming pool. E.N. stated that the pool was dirty and slimy and that after only a minute, she left the pool to wash off. E.N. went upstairs and got into the shower to rinse off, still wearing her underwear. At this time, appellant, in his underwear, and another friend, nude, joined her in the shower. However, E.N. testified that nothing of a sexual nature occurred while they were in the shower. When E.N. got out of the shower, a friend gave her a T-shirt and a pair of boxers to wear. Stumbling and feeling very tired, E.N. decided to go to a bedroom to go to sleep. A friend helped her to the bedroom, made sure she was ok, and left. A short time later, Parks and appellant entered the bedroom. Parks and appellant got into the bed with E.N. and said they were going to go to sleep as well. Appellant then asked E.N. if she had "ever been ate out" before. E.N. told him "no," and that she "didn't do that kind of stuff."
 {¶ 5} E.N. testified that she remembered very little of what happened after that point. She stated that she remembered Parks asking her if she wanted him to leave, and that she told him to stay, explaining that she did so because she didn't trust appellant. She next remembered hearing appellant tell Parks that he was "going to have sex with [her]" and that he had a condom. E.N. testified that she "wasn't completely passed out" but that she could only remember hearing things and could not recall seeing anything or remember anything happening to her body.
 {¶ 6} E.N. next remembered being awakened by a girlfriend wiping her face with a damp washcloth. She found that the sheets had been pulled off of her, the boxer shorts she had been wearing had been removed, and there was blood on her legs, vaginal area, and on the sheets. Scared, crying, and in pain, E.N. went into the bathroom to clean herself up and changed into her own clothes. E.N. gave the boxers back to her friend and then left the party. Other witnesses testified that they later observed appellant burning the blood-stained boxers that E.N. had been wearing in a fire pit. E.N. later told her mother what had happened, filed a report with the police department, and underwent a rape exam.
 {¶ 7} Acting on E.N.'s report of sexual assault, Det. Nick Fisher of the Butler County Sheriff's Office contacted and interviewed appellant. Appellant told Det. Fisher that he had been at the party and that he had engaged in sexual conduct with E.N., specifically cunnilingus and digital penetration. Appellant also initially denied that he had burned the boxer shorts that E.N. had been wearing, but later admitted that he had burned them in the fire pit. Det. Fisher testified that he asked appellant whether or not appellant thought that E.N. would have wanted him to do what he did to her, to which appellant replied "probably not." During his trial testimony, Det. Fisher also identified and read a written statement given by appellant in which appellant claimed that the sexual conduct between himself and E.N. was consensual. In the statement, appellant claimed that E.N. and Parks were "making out" and that E.N. began to "[rub] on" appellant as well. Appellant claimed that he then "finger[ed] her," took of her boxers, and performed oral sex on her.
 {¶ 8} The jury convicted appellant of both counts and the case proceeded to sentencing on December 14, 2005. Finding that a minimum sentence would demean the seriousness of the offense, the court sentenced appellant to a term of four years in prison for the offense of sexual battery and four years in prison for the offense of tampering with evidence, ordering the sentences to run concurrently. Appellant then filed this timely appeal, raising the following three assignments of error for our review.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANTAPPELLANT WHEN IT DENIED HIS MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AT THE CLOSE OF THE STATE'S EVIDENCE AND AT THE END OF THE TRIAL."
 {¶ 11} Issue Raised:
 {¶ 12} "THERE IS INSUFFICIENT EVIDENCE TO CONVICT DEFENDANTAPPELLANT WHEN THERE IS NOT EVIDENCE FOR EVERY ELEMENT OF THE ALLEGED OFFENSE."
 {¶ 13} Appellant raises two arguments under this assignment of error, asserting that his convictions for sexual battery and tampering with evidence are not supported by sufficient evidence. Appellant argues that the state failed to present evidence sufficient to establish the elements of the crimes and that no rational finder of fact could have found the essential elements proven beyond a reasonable doubt. Appellant urges that his convictions must therefore be overturned by this court. We disagree.
 {¶ 14} In reviewing a trial court's denial of a Crim.R. 29 motion and the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction.[2] State v.Lucas, Tuscarawas App. No 2005AP090063, 2006-Ohio-1675, ¶ 8, citingState v. Jenks (1991), 61 Ohio St.3d 259. "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 14.
 Sexual Battery {¶ 15} R.C.2907.03(A)(2) defines the offense of sexual battery and provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: * * * (2) the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." "Sexual conduct" is defined as "vaginal intercourse between a male and a female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 16} With regard to his conviction for sexual battery, appellant's only argument asserts that the state failed to present any evidence that the victim in this case, E.N., was "substantially impaired" when appellant engaged in sexual conduct with her. Appellant contends that the sexual conduct was knowing and consensual and that the state failed to present any evidence to the contrary, amounting to a failure to establish all of the elements essential for a conviction on sexual battery.
 {¶ 17} However, a review of Ohio case law on the offense of sexual battery reveals that Ohio courts have consistently found the essential elements to be established under circumstances similar to those presented in this case. In In re Thomas, Cuyahoga App. Nos. 83579, 83580, 2004-Ohio-6415, the Eighth Appellate District found sufficient evidence of substantial impairment where a victim of sexual battery testified that she had consumed alcohol throughout the evening and that she had passed out when the appellant engaged in sexual intercourse with her. Other witnesses corroborated the victim's testimony and stated that they had observed the victim to be "visibly intoxicated," "stumbling," and that she had fallen more than once during the evening. Id. at ¶ 33. The court held that the state had presented sufficient evidence "to allow the jury to find, beyond a reasonable doubt, that [the victim] was substantially impaired and that appellant knowingly committed sexual battery." Id. at ¶ 34.
 {¶ 18} Similarly, in State v. Lilley, Stark App. No. 2003CA00073,2003-Ohio-6792, the Fifth Appellate District found sufficient evidence of substantial impairment where the victim testified that she had consumed three vodka drinks and vomited during the evening. The victim testified that she went to lie down after becoming sick and that she later awoke to find the appellant engaging in sexual intercourse with her. Id. at ¶ 4-7. The court held that the evidence was sufficient to support the appellant's conviction for sexual battery and that the jury's verdict was not against the manifest weight of the evidence. Id. at ¶ 63.
 {¶ 19} In the case at bar, the state presented the testimony of the victim, as well as the testimony of other individuals at the party, to establish that E.N.'s ability to apprise or control the situation was, in fact, "substantially impaired" when appellant and Parks engaged in sexual conduct with her. E.N. testified that she had consumed multiple alcoholic beverages during the evening and that she also took a "hit" off of a marijuana pipe. She stated that she was stumbling and very tired when she went into the bedroom to go to sleep. Additional witnesses from the party also testified, describing E.N. as "really drunk" and "not herself," "staggering" and "stumbling" throughout the evening. Even a defense witness described E.N. as "drunk" and "stumbling," and stated that she was "loud" and "slurring her words."
 {¶ 20} E.N. also testified that she remembered only portions of what was said after Parks and appellant entered the room with her, and that she had no memory of what happened to her body. Corroborating E.N.'s account, Amanda Allen testified that she was at the same party and that she went into the bedroom to check on E.N. Allen testified that when she attempted to enter the bedroom, Parks was holding the door so that she had to push her way inside. When she entered the bedroom, Allen testified that she observed Parks and appellant in the room and that E.N. was "laying on the bed," and "asleep, unconscious, whatever, I don't know. But she wasn't aware." She testified that E.N. had no shorts on and that there was blood on her legs and on the sheets. Allen testified that she woke E.N. up and that E.N. became "hysterical," started crying, shaking and asking "what did they do?" Allen testified that she helped E.N. to the bathroom and that E.N. stated "I didn't tell them they could do this."
 {¶ 21} Other witnesses, including Kristin Carpenter, who had entered the bedroom with Allen, and Brandon Mason, who also observed E.N. in the bedroom, corroborated Allen's testimony regarding E.N.'s condition and demeanor. Another witness, Andrew Pressler, further corroborated Allen's testimony and stated that he also observed E.N. laying "passed out" on the bed. Pressler testified that Parks brought him to the bedroom to show him E.N. and that Parks pointed out three blood streaks on E.N.'s face. Pressler testified that Parks and appellant were laughing and told Pressler that the blood on her face was from her vagina.
 {¶ 22} After reviewing the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence produced by the state to establish the essential elements of the offense of sexual battery. The testimony of the victim and the witnesses, if believed, is more than sufficient to establish that E.N. had consumed a large amount of alcohol, smoked marijuana, and was acting intoxicated and impaired on the night in question. Further, the evidence presented established that E.N. was observed to be "passed out" or otherwise "unconscious," undressed and covered in blood, in the bed where Parks and appellant sexually assaulted her. Multiple witnesses testified that E.N. was "unaware" of what had happened to her and that she repeatedly stated that she did not consent to any sexual conduct.
 {¶ 23} This evidence, combined with appellant's own admission to Det. Fisher that E.N. "probably [did] not" want what happened to her, is sufficient to establish that E.N. was substantially impaired when appellant engaged in sexual conduct with her, and we accordingly reject appellant's argument with regard to this issue.
 II. Tampering with evidence. {¶ 24} R.C. 2921.12(A)(1) defines the offense of tampering with evidence and provides, in relevant part, that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: (1) [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2901.22(A) defines "purpose," and states that "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 25} With regard to his conviction for tampering with evidence, appellant argues that the state failed to present any evidence that appellant burned the boxer shorts worn by the victim with the purposeful intent to destroy evidence. Appellant points to the testimony of defense witness Pat Elam, who testified that appellant attempted to return the boxer shorts to him and asked "Do you want these shorts? They have blood on them." Elam then testified that he did not want the shorts back, and that he told appellant "they were gross" and "do what you want." Appellant argues that he burned the boxers because they were "gross" and unwanted and that no reasonable finder of fact could have found that he had done so with the intent to make them unavailable as evidence against him.
 {¶ 26} Appellant's challenge essentially asserts that the state failed to sufficiently prove his intentions in burning the boxers. With regard to the ability to prove an offender's intentions, the Ohio Supreme court has recognized that "intent, lying as it does within the privacy of a person's own thoughts, is not susceptible [to] objective proof."State v. Garner, 74 Ohio St.3d 49, 60, 1995-Ohio-168 (finding sufficient evidence of specific intent to support conviction for aggravated murder). Intent must often instead be inferred from the act itself and the surrounding circumstances, including the acts and statements of the defendant surrounding the time of the offense. State v. Hutchinson
(1999), 135 Ohio App.3d 459, 457 (considering offender's actions and statements in finding sufficient evidence of specific intent to support conviction for attempted aggravated murder), citing Garner.
 {¶ 27} In this case, the state presented the testimony of multiple witnesses who observed both the circumstances at the time appellant decided to burn the boxers, as well as appellant's behavior while doing so. Several witnesses testified that E.N. was "hysterical" and "crying" about what had happened and that she then immediately dressed and left the party. Det. Fisher testified that in appellant's written statement, appellant admitted to trying to talk to E.N. before she left the party, and that she screamed at him and told him to get out. Additionally, Andrew Pressler testified that when he observed E.N. lying unconscious in the bedroom with blood smeared on her face, that he told both Parks and appellant that "[they] could go to jail for this," and stated "this ain't going to be over tonight." It is clear that appellant was aware of the potential for an investigation into his actions that night and this point is not contested in appellant's brief.
 {¶ 28} The state also presented the testimony of multiple witnesses who observed appellant burning the boxers in the fire pit after E.N. left the party. One witness testified that while he was burning the shorts, appellant was attempting to deny that he had any sexual contact with E.N., stating "Fuck that. I didn't do shit to her." Another witness testified that she asked appellant why he was burning the shorts, stating that "if you didn't do anything with her, then why are you worried about burning the shorts?," but appellant did not respond. Additionally, Det. Fisher testified that appellant initially denied burning the boxer shorts, but later admitted to burning them in the fire pit. Again referring to the written statement given by appellant, Det. Fisher testified that when he asked appellant why he had burned the boxers, appellant could not give a definite answer, but stated that "things were really getting out of control and wild as people were asking a lot of questions."
 {¶ 29} Appellant asserts that the testimony of Pat Elam, regarding his instructions to appellant to "do what you want" with the boxer shorts, is evidence that appellant merely destroyed the boxer shorts because they were "gross." The weight and credibility to be given such evidence is a determination for the jury. A review of that determination is not appropriate within a review of the sufficiency of the evidence. SeeState v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.
 {¶ 30} We find that the evidence presented by the state was sufficient, if believed, to establish the essential elements of the crime of tampering with evidence. The state presented the testimony of witnesses who testified that appellant was both aware that an investigation could be forthcoming and that appellant destroyed the bloodied boxer shorts for the purpose of making them unavailable as evidence against him. Accordingly, we reject appellant's argument with regard to this issue. Further, because we find that the state presented evidence sufficient to support appellant's convictions for sexual battery and tampering with evidence, we overrule appellant's first assignment of error.
 {¶ 31} Assignment of Error No. 2:
 {¶ 32} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTAPPELLANT WHEN IT DENIED HIS MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AT THE CLOSE OF THE STATE'S [CASE] AND AT THE END OF THE TRIAL."
 {¶ 33} Issue Raised:
 {¶ 34} "THE CONVICTION OF THE DEFENDANT APPELLANT IS AGAINST THE WEIGHT OF THE EVIDENCE."
 {¶ 35} Appellant argues that his conviction for sexual battery is against the weight of the evidence presented at his trial. Appellant again asserts that there was no evidence to support the jury's finding that E.N. was substantially impaired when appellant engaged in sexual conduct with her. He contends that E.N.'s recollection of other events throughout the night indicate that she was aware of everything she was doing and that the jury lost its way in the evidence, creating a miscarriage of justice.
 {¶ 36} While sufficiency of the evidence concerns the state's burden to produce evidence on each element of the crime charged sufficient for the matter to be submitted to the jury, manifest weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Thompkins, 78 Ohio St.3d at 387. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." Id. In such a review, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 37} However, while a reviewing court considers the credibility of the witnesses in a weight of the evidence review, "that review must nevertheless be tempered by the principle that weight and credibility are primarily for the trier of fact," in this case the jury, as they are in "the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." State v. Kash, Butler App. No. CA2002-10-247, 2002-Ohio-415, ¶ 25; citing State v. DeHass (1967),10 Ohio St.2d 230. Further, when there exists two reasonable views of the evidence, a reviewing court may not choose which view it prefers, but must instead accede to the findings of the trier-of-fact. State v.Gore (1999), 131 Ohio App.3d 197, 201, citing Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77.
 {¶ 38} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins, 78 Ohio St.3d at 387. Further, an appellate court will not reverse a judgment that was the result of a jury trial as against the weight of the evidence unless there is a unanimous concurrence of all three judges on the appellate panel. Id. at 389.
 {¶ 39} We find no reason to disturb the findings of the jury with regard to appellant's conviction for sexual battery in this case. While appellant argues that the jury could not reasonably find that E.N. was substantially impaired when appellant engaged in sexual conduct with her, it is clear that the state presented a substantial amount of evidence, as described above, to establish that E.N. had consumed an unusual amount of alcohol at the party, was stumbling and slurring her words, and was intoxicated. Further, the testimony of multiple witnesses established that E.N. was observed to be "passed out" or "unconscious" in the bedroom, and that she was not aware of what had happened to her once she woke up. It is the function of the jury to judge the credibility of each of the witnesses and determine what weight to give their testimony. We cannot say that the jury clearly lost its way in the evidence in this case or created a manifest miscarriage of justice. Accordingly, appellant's second assignment of error is overruled.
 {¶ 40} Assignment of Error No. 3:
 {¶ 41} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANTAPPELLANT WHEN IT SENTENCED HIM."
 {¶ 42} Issue Raised:
 {¶ 43} "THE SENTENCE IMPOSED IN THIS CASE IS UNCONSTITUTIONAL."
 {¶ 44} Appellant's third assignment of error challenges the sentences imposed by the trial court as contrary to law. Specifically, appellant challenges the court's imposition of a prison term beyond the minimum as violative of Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, and the Ohio Supreme Court's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856.
 {¶ 45} We note that appellant was sentenced under portions of Ohio's statutory sentencing scheme which have since been deemed unconstitutional by the Ohio Supreme Court. Among these sections are R.C. 2929.14(B) and R.C. 2929.19(B)(2), which required judicial fact finding before the imposition of sentences beyond the minimum term.Foster at ¶ 97-99. The court severed these sections from the remaining statutory provisions. Id. As a result of the court's severance of the provisions from Ohio's sentencing code, judicial fact finding prior to the imposition of a sentence within the basic ranges of R.C. 2929.14(A) is no longer required. Foster at ¶ 100.
 {¶ 46} The Foster court instructed that all cases pending on direct review in which the unconstitutional sentencing provisions were utilized must be remanded for resentencing. Foster at ¶ 104. The state agrees that appellant in this case was sentenced under statutes now deemed unconstitutional and must be resentenced. Consequently, we remand this case for resentencing consistent with Foster. The trial court will have full discretion to impose sentences within the statutory range and is no longer required to make findings or give reasons for imposing consecutive or more than minimum sentences. Appellant's third assignment of error is sustained.
 {¶ 47} Having reviewed the assignments of error, we affirm appellant's convictions for sexual battery and tampering with evidence. However, pursuant to Foster, we reverse the court's sentencing decision and remand this matter for resentencing.
 {¶ 48} Judgment reversed as to sentencing only.
POWELL, P.J., and YOUNG, J., concur.
[1] Parks, a juvenile at the time of the offense, was adjudicated delinquent in a separate case for his role in the offenses committed against the victim in this case.
[2] Ohio Crim.R. 29 provides that "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt."