OPINION
{¶ 1} Defendant-appellant, G'Aion Dewberry, appeals his conviction from the Fayette County Common Pleas Court for breaking and entering, safecracking, and possession of criminal tools.
 {¶ 2} Appellant was charged with the three felony offenses after it was alleged that he was one of two men who broke into the Prime Outlet Mall food court area and tampered with an ATM located inside the building. Appellant's case was tried to a jury, which found him guilty of all charges. After sentencing, appellant instituted this appeal, presenting two *Page 2 
ssignments of error. We will address appellant's two assignments of error together.
 {¶ 3} Assignment of Error No. 1:
 {¶ 4} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S CRIMINAL RULE 29 MOTION BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO IDENTIFY HIM AS THE PERPETRATOR OF THE OFFENSES CHARGED."
 {¶ 5} Crim.R. 29 provides that "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt." The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Prater, Butler App. No. CA2006-01-107, 2006-Ohio-7028, ¶ 14.
 {¶ 6} Assignment of Error No. 2:
 {¶ 7} "DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 8} A court considering whether a conviction is against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. The question is whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Id.; see, also, State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52; State v. Blanton, Madison App. No. CA 2005-04-016, 2006-Ohio-1785, ¶ 7.
 {¶ 9} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Hancock at ¶ 42. We must be mindful that the original trier of fact was in the best position to judge the *Page 3 
redibility of witnesses and the weight to be given the evidence.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of syllabus. A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment of a trial court on the weight of the evidence in a jury trial. Thompkins at 389.
 {¶ 10} Appellant does not specifically challenge whether the elements of the respective offenses were proven. Rather, appellant argues that there was insufficient evidence to connect the offenses that were committed to appellant. Further, appellant argues that the lack of evidence tying him to the crimes, coupled with the fact that a state's witness provided him with an alibi, demonstrates that the jury clearly lost its way with its verdict.
 {¶ 11} The state presented evidence from a security officer at the outlet mall that she observed two black men wearing dark, hooded clothing, standing by the ATM machine in the food court area around 3:30 a.m. on the morning of October 17, 2006. The officer testified that the men ran out the front door when she called out to them. Investigators would later find pry marks and other evidence of tampering at the front doors of the building and what appeared to be an impression from a glove on the doors. In addition, the front panel of the ATM machine was removed and the lock mechanism was exposed.
 {¶ 12} The officer testified that she turned to close the back door in which she had entered, and therefore, did not see where the two men ran immediately after they left the building. The security officer stated that she observed a dark-colored late model four-door Chrysler with "shiny rims" pull away from the a parking area of a restaurant, which was close to the food court building. She called in a description of the vehicle to law enforcement.
 {¶ 13} A trooper from the Ohio State Highway Patrol testified that he was in the vicinity of the outlet mall when he heard the dispatch about the breaking and entering. The trooper observed a vehicle a short distance from him with its headlights extinguished. The vehicle, *Page 4 
hich matched the description provided by dispatch, was backing away from his vehicle. The trooper eventually stopped the vehicle when it passed by him with its lights still extinguished.
 {¶ 14} Located inside the vehicle was a female driver, appellant in the front passenger seat, a black male in the back seat, and the driver's five-year-old daughter asleep in the back seat area. Law enforcement officers testified at trial that appellant's dark, hooded clothing was wet or "soaked" from the continuous rain that morning, as was the clothing of the male in the back seat. Officers found a set of wet gloves on the floor of the front passenger seat and a pair of wet gloves on the floor of the back passenger seat.
 {¶ 15} A sledgehammer, smaller sledgehammer, and two pry bars were located in the trunk of the vehicle. Red paint similar to the red paint on the front doors of the food court was found on a pry bar.
 {¶ 16} The female driver was called as a witness by the state. She indicated that appellant was her boyfriend, that she had asked him to accompany her from Cincinnati to Fayette County to retrieve her brother, and she did not know the male in the back seat. The female driver indicated she made contact with her brother in the restaurant parking lot and the unknown male in her back seat was with her brother. The driver testified that the tools recovered in her trunk were not in her trunk when she left Cincinnati. She indicated that when she located her brother in the parking lot, she used her remote release to open her trunk at her brother's request and her brother placed something heavy in her trunk.
 {¶ 17} The driver testified that appellant was with her the entire time and stepped out of the car for five or six seconds to force her brother out of the car as the brother attempted to get into the front seat. She indicated that she eventually drove away from her brother, leaving him there.
 {¶ 18} The evidence presented in this case identifying appellant as the perpetrator of these offenses is circumstantial. However, the state can use direct or circumstantial *Page 5 
evidence to prove the elements of a crime. State v. Nicely (1988),39 Ohio St.3d 147, 151; State v. Ray, Butler App. No. CA2006-05-115,2007-Ohio-2291, ¶ 18. Circumstantial evidence and direct evidence inherently possess the same probative value. State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355.
 {¶ 19} After viewing the evidence in a light most favorable to the state for purposes of the Crim.R. 29 motion, and after reviewing the elements of the offenses with which appellant was charged, we find that any rational trier of fact could have found the essential elements of the crimes of breaking and entering, safecracking, and possession of criminal tools proven beyond a reasonable doubt. On the issue specifically raised by appellant, the jury could have found beyond a reasonable doubt that appellant was one of the individuals who forced his way into the mall food court building and tampered with the ATM machine, using the tools found in the trunk of the car.
 {¶ 20} Appellant argues that the female driver provided his alibi for the time the crimes were committed, and implicated her brother as the probable suspect.[1]
 {¶ 21} Evidence was presented that appellant was found soaking wet near the crime scene wearing clothing that matched the description provided by the security officer. Appellant was riding in a car fitting the description of the vehicle the security officer observed leaving the vicinity, and this same vehicle contained tools bearing red paint that appear to have been used to force entry into the red front doors of the building and the ATM machine. Wet gloves were also found on the floor where appellant was sitting.
 {¶ 22} Evidence was also presented that the female driver drove all the way from *Page 6 
Cincinnati in the early morning hours to retrieve her brother, only to leave him there, and drive away with an unknown male in the back seat with her five-year-old daughter.
 {¶ 23} The jury may believe or disbelieve any witness or accept part of what a witness says and reject the rest. State v. Antill (1964), 176 Ohio St. 61, 67. After reviewing the record, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.
 {¶ 24} Appellant's first and second assignments of error are overruled.
 {¶ 25} Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] The female driver testified that the brother she was referring to died before this trial was held. A law enforcement officer testified that he asked the driver while the case was pending to provide her brother's name, but she indicated that she would not disclose the name upon her counsel's advice. *Page 1