OPINION *Page 2 
{¶ 1} Defendant-appellant, Parish Frederick Rushin, appeals from his conviction and sentence in the Stark County Court of Common Pleas for one count of sexual battery a felony of the third degree in violation of R.C. 2907.03. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In December 2006, Kira Climes went to the apartment of a co-worker, Jordan Mears. She arrived at the apartment between 7:30 and 8:00 p.m. Jordan's friends Kayla Trainer and Christa Pasco were there when Kira arrived and were drinking shots of vodka. Kira drank four or five shots within an hour. Kira remembers appellant and his brother, Malichi Rushin, arriving at the apartment, but does not remember if she drank shots with them. Appellant, however, recalled drinking with Kira.
 {¶ 3} Kira recalled Christa leaving, Kayla going into Jordan's room to sleep, and Jordan and Malichi going into the bathroom to have sex. Jordan remembered Kira being on the sofa with her back to appellant, propped up against him when she left the living room. Jordan observed that Kira was "definitely drunk" when she left the room. She assumed that if Kira had stood up, she would have fallen down.
 {¶ 4} Jordan came out of the bathroom about 30 minutes later and saw appellant pulling up his boxer shorts and Kira passed out on the couch. Kira was naked from the waist down. Alarmed, Jordan went to Kira, shook her awake, and asked if she had been raped. Kira woke and burst into tears. Jordan told appellant to get out of her home. Kira could not dress herself, so Jordan helped her put on her underwear and pants. Jordan, Kira, Kayla and Malichi then went to Mercy Medical Center. *Page 3 
 {¶ 5} At the hospital, Jennifer Raines, a staff nurse and forensic nurse examiner, examined Kira. Raines saw Kira at 11:35 p.m. and took a urine sample at 12:26 a.m. Raines observed Kira as very tearful, very drowsy, and shaky. Raines also noted a strong odor of alcohol about Kira. Because Kira was too emotional to speak, Raines took information from both Jordan and Kira about what had transpired. Raines' notes indicated that Kira remembered talking to appellant and then lying down on the couch for "just a second." She did not recall appellant removing her clothing. Raines' notes also indicated that Jordan recalled exiting the bathroom, seeing appellant completely naked and Kira passed out on the couch, naked form the waist down with a blanket between her legs.
 {¶ 6} Because Kira was intoxicated, Raines administered a clinical sobriety tool. The purpose of the test was not to determine if she was sober, but rather to determine if she was competent enough to consent to treatment. Kira was able to tell Raines where she was, the date and time, subtract 7 from 100, spell "world" backward, and repeat back three objects. Thus satisfied that Kira could consent to treatment, Raines completed a sexual assault exam of Kira.
 {¶ 7} Canton Police Officer Kevin Clary responded to Jordan's apartment. He photographed the scene and collected a used condom from the wastebasket in the kitchen. He swabbed the inside and the outside of the condom and sent the swabs to the Canton-Stark County Crime Lab for analysis.
 {¶ 8} Canton Police Detective Dan McCartney interviewed appellant. Appellant denied that he had sex with Kira and further told officers they would not find a condom *Page 4 
with his DNA on it in Jordan's home. Appellant consented to DNA testing. Appellant also told his brother Malichi that he never had sex with Kira.
 {¶ 9} Criminalist Jennifer Creed developed DNA profiles for Kira and appellant. She then compared their profiles to the DNA profiles she had developed from the outside of the condom and the inside of the condom. The DNA obtained from the inside of the condom matched appellant's profile and the DNA from the outside of the condom matched Kira's profile.
 {¶ 10} Kira's recollection of the events of the evening is not complete. Further, she does not remember anything from the time Jordan and Malichi left the room until Jordan shook her awake and she discovered herself naked from the waist down.
 {¶ 11} Brad Taylor of the Stark County Crime Lab testified that the maximum absorption, or time when one can expect to see the highest percentage of alcohol in urine, is 60 to 90 minutes after the last drink. Thereafter, the amount of alcohol in the urine decreases by .015 to .02 percent per hour.
 {¶ 12} At trial appellant claimed he engaged in consensual sexual conduct with Kira. He admitted, however, that he lied to police during the investigation and claimed he never had sex with Kira. Appellant explained these statements by testifying he was scared to tell the police that he had sex with Kira because she is Caucasian and he is African American.
 {¶ 13} The jury found appellant guilty as charged. He was sentenced to two years incarceration and classified as a sexually oriented offender.
 {¶ 14} It is from this conviction, and sentence that appellant now appeals, assigning the following error for review: *Page 5 
 {¶ 15} "I. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 I. {¶ 16} In his sole assignment of error, appellant maintains that his conviction is against the sufficiency of the evidence and against the manifest weight of the evidence. We disagree.
 {¶ 17} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins, supra at 78 Ohio St.3d 390.
 {¶ 18} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, superseded by State constitutional amendment on other grounds as stated in State v. Smith (1997),80 Ohio St. 3d 89.
 {¶ 19} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind *Page 6 
of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App. 3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Thompkins, 78 Ohio St. 3d at 386.
 {¶ 20} The Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 {¶ 21} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St. 3d 380,678 N.E. 2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386,678 N.E. 2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E. 2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387,678 N.E. 2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony.' Id. at 387,678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652. *Page 7 
 {¶ 22} "Both C.E. Morris Co., 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and sufficiency. See State v. Maple
(Apr. 2, 2002), 4th Dist. No. 01CA2605, 2002 WL 507530, fn. 1; State v.Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66, 2001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. C.E. MorrisCo. Conversely, under Thompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still re-weigh the evidence and reverse a lower court's holdings. State v.Thompkins, 78 Ohio St.3d 380, 678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. See Barkley v.Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989." State v.Wilson, 713 Ohio St.3d 382, 387-88, 2007-Ohio-2202 at ¶ 25-26;865 N.E.2d 1264, 1269-1270.
 {¶ 23} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St. 3d at 387. (Quoting State v. Martin (1983),20 Ohio App. 3d 172, 175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 24} In State v. Thompkins supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient *Page 8 
evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus;State v. Miller (2002), 96 Ohio St. 3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 25} Appellant was found guilty of one count of Sexual Battery, in violation of R.C. 2907.03(A) (2) or (3), which provides, in pertinent part:
 {¶ 26} "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * *(2) [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired. (3) The offender knows that the other person submits because the other person is unaware that the act is being committed."
 {¶ 27} "Sexual conduct" is defined as "vaginal intercourse between a male and a female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 28} Appellant testified that he and the victim engaged in sexual conduct. Accordingly, with regard to his conviction for sexual battery, appellant's only argument asserts that the state failed to present any evidence that he knew the victim in this case was "substantially impaired" when appellant engaged in sexual conduct with her. *Page 9 
Appellant contends that the sexual conduct was knowing and consensual and that the state failed to present any evidence to the contrary, amounting to a failure to establish all of the elements essential for a conviction on sexual battery.
 {¶ 29} The Ohio Supreme Court has held that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." State v.Zeh (1987), 31 Ohio St. 3d 99, 104. "`Substantial impairment' need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct." State v.Brady, Cuyahoga App. No. 87854, 2007-Ohio-1453 at ¶ 78; State v.Jordan, Harrison App. No. 06 HA 586, 2007-Ohio-3333 at ¶ 97; State v.Hillock, 7th Dist. No. 02-538-CA, 2002-Ohio-6897, at ¶ 21. However, although Zeh touched on the issue of what constituted "substantial impairment," its holding was limited to instructing when the defense could ask the court to bar the state from utilizing evidence of the contested mental condition of a victim-potential witness. Id. at 105,509 N.E. 2d 414. State v. Hillock, Harrison App. No. 02-538-CA, 2002-Ohio-6897 at ¶ 24.
 {¶ 30} A review of Ohio case law on the offense of sexual battery reveals that Ohio courts have consistently found the essential elements to be established under circumstances similar to those presented in this case. State v. Prater, 12th Dist. No. CA2006-01-017,2006-Ohio-7028 at ¶ 17. *Page 10 
 {¶ 31} In In re Thomas, Cuyahoga App. Nos. 83579, 83580, 2004-Ohio-6415, the Eighth Appellate District found sufficient evidence of substantial impairment where a victim of sexual battery testified that she had consumed alcohol throughout the evening and that she had passed out when the appellant engaged in sexual intercourse with her. Other witnesses corroborated the victim's testimony and stated that they had observed the victim to be "visibly intoxicated," "stumbling," and that she had fallen more than once during the evening. Id. at ¶ 33. The court held that the state had presented sufficient evidence "to allow the jury to find, beyond a reasonable doubt, that [the victim] was substantially impaired and that appellant knowingly committed sexual battery." Id. at ¶ 34. State v. Prater, supra at ¶ 17.
 {¶ 32} Similarly, in State v. Lilley, Stark App. No. 2003CA00073,2003-Ohio-6792, this Court found sufficient evidence of substantial impairment where the victim testified that she had consumed three vodka drinks and vomited during the evening. The victim testified that she went to lie down after becoming sick and that she later awoke to find the appellant engaging in sexual intercourse with her. Id. at ¶ 4-7. This court held that the evidence was sufficient to support the appellant's conviction for sexual battery and that the jury's verdict was not against the manifest weight of the evidence. Id. at ¶ 63;State v. Prater, supra at ¶ 18.
 {¶ 33} In State v. Prater, supra, the Twelfth Appellate Dist. found sufficient evidence of substantial impairment where the victim testified that she consumed multiple alcoholic beverages during the evening and that she also took a "hit" off of a marijuana pipe. "She remembered very little of what happened after that point. She stated that she remembered Parks asking her if she wanted him to leave, and that she *Page 11 
told him to stay, explaining that she did so because she did not trust appellant. She next remembered hearing appellant tell Parks that he was `going to have sex with [her]' and that he had a condom. E.N. testified that she `wasn't completely passed out' but that she could only remember hearing things and could not recall seeing anything or remember anything happening to her body." Id. at 5. Additional witnesses from the party also testified, describing E.N. as "really drunk" and "not herself," "staggering" and "stumbling" throughout the evening. Id. at 19.
 {¶ 34} In the case at bar, the state presented the testimony of the victim, as well as the testimony of other individuals at the party, to establish that Kira's ability to apprise or control the situation was, in fact, "substantially impaired" when appellant engaged in sexual conduct with her.
 {¶ 35} Kira testified that she arrived at Jordan's house between 7:30 and 8:00 p.m. and drank four to five shots of vodka within an hour. Jordan testified that the group was drinking 80-proof vodka from a double shot glass. Kira's recollection of the events of the evening is not complete. Further, she does not remember anything from the time Jordan and Malichi left the room until Jordan shook her awake and she discovered herself naked from the waist down. Jordan testified that Kira was "definitely" drunk when she left the room with Malichi, and further, she assumed that if Kira had stood up, she would have fallen down. Twenty to thirty minutes later, Jordan re-entered the room to see Kira passed out on the couch, naked from the waist down and Parish pulling his boxers back on. Jordan had to shake Kira hard to wake her up. Kayla testified that Kira was so intoxicated she could not put her own clothes on, so Jordan had to dress her. Canton Police officer Michael Roberts testified that when he spoke with Kira, she was *Page 12 
hysterical, had a strong odor of alcohol about her and appeared to be intoxicated. Nurse Raines testified that Kira was intoxicated and drowsy when she examined her at 11:30 p.m.
 {¶ 36} Appellant and his brother were the only two witnesses who testified that Kira was not substantially impaired or passed out. However, appellant admitted that he saw Kira stumble on her way back from the bathroom. Further, at trial appellant claimed he engaged in consensual sexual conduct with Kira. He admitted, however, that he lied to police during the investigation and claimed he never had sex with Kira. Appellant attempted to explain these statements away by alleging he was scared to say he had sex with Kira. His reason was that she is Caucasian and he is African American and therefore the police would immediately believe Kira.
 {¶ 37} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of sexual battery.
 {¶ 38} We hold, therefore, that the State met its burden of production regarding each element of the crime of sexual battery and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 39} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna *Page 13 Life Ins. Co. v. Ward, 140 U.S. 76, 88, 11 S.Ct. 720, 724-725,35 L.Ed. 371 (1891)". United States v. Scheffer (1997), 523 U.S. 303, 313,118 S.Ct. 1261, 1266-1267.
 {¶ 40} Although appellant cross-examined the witnesses and argued that the victim consented to the sexual relations, and further, that the victim's ability to resist or consent was not substantially impaired, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 41} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964),176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 42} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the conviction. The jury *Page 14 
did not create a manifest injustice by concluding that appellant was guilty of the crime charged in the indictment.
 {¶ 43} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 44} Appellant's sole assignment of error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.
 Gwin, J., Hoffman, P.J., and Delaney, J., concur *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant. *Page 1