The STATE of Ohio, Appellee,

v.

PACKER, Appellant.

[Cite as *State v. Packer*, 188 Ohio App.3d 162, 2010-Ohio-2627.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

Nos. L–08–1145 and L–08–1146.

Decided June 11, 2010.

Julia R. Bates, Lucas County Prosecuting Attorney, and Patricia C. Hays, Assistant Prosecuting Attorney, for appellee.

Stephen D. Long, for appellant.

---

CosME, Judge.

{¶ 1} This appeal arises out of the denial by the Lucas County Court of Common Pleas of appellant's motion to continue his jury trial. Appellant, acting pro se, argued at trial that newly prescribed medications were impairing his ability to properly represent himself in defending obstruction-of-justice and nonsupport-of-dependants charges. Because we find that a physician's prescribed medication for appellant's mental-health condition cannot be characterized as a voluntary incapacitation, we conclude that the trial court erred in denying appellant's motion to continue on the first day of trial and we reverse.

## I. BACKGROUND

{¶ 2} On July 12, 2007, and October 10, 2007, appellant was indicted on one count of obstructing justice in violation of R.C. 2921.32(A)(5) and (C)(3) and one count of nonsupport of dependents in violation of R.C. 2919.21(B) and (G)(1), both felonies of the fifth degree. Appellant was found to be indigent and counsel was appointed in both cases.

{¶ 3} After several pretrials and continuances, trial was set for January 25, 2008. On that date, the court denied counsel's request to have separate trials and then heard appellant's request to proceed pro se in both cases, with his prior appointed counsel to remain as "advisory counsel." The court then granted appellant's motion to vacate and reschedule the trial date. Trial was set for March 3, 2008. On February 27, 2008, appellant filed a pro se motion for continuance and to re-set the trial date, which the court denied.

{¶ 4} On March 3, 2008, prior to the commencement of the trial, appellant renewed his request for a continuance, stating that he had just begun taking new medications prescribed by his psychiatrist and he felt unable to effectively go forward with the proceedings. Advisory counsel informed the court that although appellant did not have the written prescriptions, he was carrying with him the medications—Wellbutrin and Ambien. Advisory counsel also offered to produce a letter from appellant's psychiatrist confirming the medical necessity for the prescribed medical treatment. Appellant's request was denied. The court opined that appellant was simply trying to "delay the inevitable." The court then brought in the prospective jurors and made some introductory remarks.

{¶ 5} Appellant's advisory counsel again approached the bench and objected to continuing with trial, which the court overruled. A discussion was then conducted outside the presence of the jury, so that advisory counsel could put the reasons for the objection on the record. Advisory counsel again told the trial court that appellant was demonstrating that he was being affected by his medication. In addition, appellant was not cooperating with her advice and had been sleeping through much of the proceedings up until that point. Advisory counsel further said that when appellant previously asked to act pro se, he felt capable of representing himself. Due to the stress of the case, other outside influences, and the effects of the medications, he felt he was no longer able physically and mentally to proceed. Advisory counsel requested a competency evaluation and a continuance.

{¶ 6} The court denied advisory counsel's request, stating that appellant had been taking notes at times and was "alert and responsive when it was called for" and that when appellant felt it was in his best interest, he had "been able to respond fairly accurately." The court then conducted voir dire of the jury.

During voir dire, one of the jurors acknowledged that she had a problem with appellant representing himself because he had not taken notes and had been asleep "the whole time." Appellant explained that he felt ill, but when asked if her observation would prevent her from being impartial, the prospective juror stated that she "would hope not."

{¶ 7} During the challenges for cause, conducted in the presence of the jury, appellant asked to excuse that juror. He stated that he did not believe she could be impartial and that there was a problem with bias. The trial court denied that challenge, stating that in the court's opinion, the juror's response evidenced "a sincere and genuine effort to be fair and impartial." The court then explained peremptory challenges, stating that those would be exercised outside the presence of the jury to prevent them from knowing who had excused certain members. The jury then recessed for a lunch break.

{¶ 8} At this point, the court told advisory counsel that it would entertain appellant's request to present evidence regarding his medical condition and prescriptions. Appellant then told the court that he was taking medications for depression, anxiety, and to aid sleep. He said that he sought mental-health treatment the week before trial because he was having "serious emotional problems, some of them dealing with harming" himself and was afraid of overreacting when disciplining his children. He had previously resisted taking medications, but was able to get an appointment with a psychiatrist at a local mental-health facility, the Zepf Center, on the Friday before trial. That doctor prescribed the medications he was taking and wrote a letter submitted by appellant that stated that he was not able to work at that time.

{¶ 9} Although appellant said that he knew generally that medications could have side effects, he stated that he did not know how the new medications would affect him specifically. Appellant also noted that because of the possibility of additional side effects, the doctor waited to prescribe two additional medications. Appellant stated that he was to return to the doctor in three weeks for a re-check and to start those additional prescriptions.

{¶ 10} The court then consulted with its law clerk, who then attended the proceedings. Appellant's advisory counsel again explained the basis for his motion for a continuance, stating that appellant indicated that the drugs he was taking made it difficult to maintain his thought process and diminished his attention span. She further stated that appellant was experiencing nausea, extreme fatigue, difficulty staying awake, and diminished reaction times, which all affected his ability to adequately and appropriately represent himself.

{¶ 11} The state argued that appellant had caused many delays in a related juvenile case and that his choice to see a doctor now and to take medication was a delay tactic. Advisory counsel objected that previous delays or events in the

juvenile court were irrelevant to appellant's current medical condition and his ability to proceed. Ultimately, the court deemed appellant's choice to see the doctor and begin medications prescribed for his mental-health condition as "voluntary" but took the matter under advisement.

{¶ 12} The court then continued with the trial, dismissing the peremptorily excused jurors, seated the jury, and heard opening statements. Appellant objected to a portion of the state's opening statement as being "outside the scope of the indictment." Again, outside the presence of the jury, advisory counsel argued the basis for the objection, that the information was irrelevant and misleading to the jury. The court overruled the objection, as used in opening statements, stating that any confusion to the jury could be cured by a jury instruction. At this point, at appellant's request, the court also addressed his earlier motion for continuance and request to proceed with appointed counsel. The court stated that, after reviewing case law, it would not grant the continuance, finding that appellant "appears to be able to cooperate * * *. I see it only really as another delaying tactic of when will you be better, how long until you come back, when it looked contrived to be honest with you."

{¶ 13} The state concluded its opening statement and appellant also presented brief opening remarks. The state then presented its case, beginning with the testimony of Faith Catching, mother of appellant's child. Appellant cross-examined Catching, with many objections from the state based on the form and manner of his questions or responses to Catching's answers. After Catching's testimony, appellant and his advisory counsel again notified the court that he was feeling upset, agitated, and anxious, that he feared the medication was wearing off, and that he wished to stop for the day and contact his doctor. He noted that the medication normally calmed him, but that he was feeling highly stressed and worried that he might be unable to control any outbursts or behavior. Appellant was also worried he might be having complications related to his high blood pressure.

{¶ 14} The court then dismissed the jury for the day, stating that it was stopping early. After briefly discussing the witnesses to be called the next day, the court adjourned at 4:13 p.m., 17 minutes earlier than normal.

{¶ 15} The next day, appellant did not appear for trial set to begin at 9:00 a.m. Outside the presence of the jury, advisory counsel informed the court that appellant had left her a phone message the prior evening at 5:00, stating that he had tried but was unable to contact his doctor at the Zepf Center. He stated in the message that he might have to be admitted and would update her further. Appellant had again called her office that morning and informed advisory counsel's secretary that he was at Rescue Crisis and would be unable to attend trial that day. To confirm this information, advisory counsel's secretary called

Rescue Crisis staff, who initially would not provide any information due to HIPAA laws. After the secretary explained that appellant was due in court, however, the Rescue Crisis staff person "checked their system" and "called out into the people in the waiting room" but could not find anyone in their facility "when his name was yelled out." Advisory counsel said she had also tried to call appellant at his home phone, but only reached his voicemail.

{¶ 16} The court also noted that appellant had "reported via phone to the staff that he was going to Rescue Crisis" and that the court staff "then called Rescue Crisis and have been informed that there is no one there by the name of Packer." At 9:45 a.m., the court stated that since appellant had not appeared or "otherwise notif[ied]" the court, his absence was voluntary, and the trial would proceed without him. The court then permitted advisory counsel to leave, but construed her comments as an objection to continuing with trial and a request for a continuance, overruling both.

{¶ 17} The court then brought in the jury, advised them that appellant "voluntarily chose" not to be there and said that the trial would continue without appellant or any defense counsel. The court also explained that despite the fact that appellant had voluntarily chosen not to be there, the jury was free to believe or not to believe any of the state's witnesses. The state then presented seven witnesses who testified as to appellant's educational level, his work history, support-payment history, amounts of child support owed, docket records, and cell-phone records. No cross-examination of witnesses was conducted, no defense was presented, and advisory counsel was not present.

{¶ 18} The jury found appellant guilty on both counts. Appellant now appeals from that judgment, arguing three assignments of error.

## THE RIGHT TO THE ASSISTANCE OF COUNSEL

{¶ 19} In his first assignment of error, appellant argues:

"Mr. Packer's state and federal constitutional rights to the assistance of counsel were violated when he was tried without the benefit of counsel and in the absence of a knowing, intelligent, and voluntary waiver of his right of the assistance of counsel."

{¶ 20} The right to counsel in a criminal proceeding is guaranteed under the Sixth Amendment to the United States Constitution. See *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. The Sixth Amendment is applicable to the states by the Fourteenth Amendment, which guarantees the right to assistance of counsel in criminal proceedings. *Herring v. New York* (1975), 422 U.S. 853, 857, 95 S.Ct. 2550, 45 L.Ed.2d 593. Under Ohio law, "a criminal defendant has the right to representation by counsel or to

proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously." *State v. Martin,* 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, paragraph one of the syllabus.

{¶ 21} Our analysis begins with a review of the record to ascertain whether appellant's request to reappoint his advisory counsel is supported by the record. In the present case, although appellant responded and questioned the jurors on voir dire and cross-examined the state's first witness, appellant's advisory counsel acted as his direct representative numerous times. She objected at various times, responded directly to the court's rulings, and directly intervened with the court several times with appellant's successive requests for a continuance.

{¶ 22} In addition, the jury was well aware that appellant was impaired and was not adequately defending himself. One prospective juror voiced her confusion as to why appellant was not permitting his counsel to represent him, commenting that he was not asking questions on his own and that his advisory counsel was telling him what to ask. When appellant explained that he was not feeling well and was under medication, she asked, "Is that why you've been sleeping?" Therefore, the record supports appellant's assertion that his condition hindered his ability to represent himself and that his counsel was acting more than just as an advisory or standby attorney. At the least, this and the numerous times the court stopped the proceedings to address appellant's objections outside the jury's presence created confusion among the jurors, since both appellant and his advisory counsel were acting as counsel.

{¶ 23} We next turn our attention to the issue whether either appellant's or advisory counsel's requests for a continuance should have been granted. Generally, the decision "whether to grant a continuance is within the sound discretion of the trial court." *Hartt v. Munobe* (1993), 67 Ohio St.3d 3, 9, 615 N.E.2d 617. Consequently, "[a]n appellate court will not find error 'unless it clearly appears, from all the facts and circumstances, that there has been an abuse of discretion, operating to the prejudice of the party in the final determination of the case.' 3 Ohio Jurisprudence 2d 730, Appellate Review, Section 756." *Garrett v. Garrett* (1977), 54 Ohio App.2d 25, 34, 8 O.O.3d 41, 374 N.E.2d 654. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 24} Nevertheless, a trial court must balance the need to control its docket and the right of the nonmoving party to a disposition of the cause against the prejudice to the moving party resulting from failure to grant the continuance

requested. *Polk v. Polk,* 11th Dist. No. 2006–T–0048, 2007-Ohio-2049, 2007 WL 1241342, ¶ 15. Continuances should be granted liberally, when "necessary to maintain a fair proceeding." *Losch v. DeNoi* (May 24, 1991), 11th Dist. No. 89–T–4288, 1991 WL 87314. When determining whether to grant a continuance premised on " 'illness of counsel, * * * it is usually considered a good ground for continuance * * * but in such case it must appear that applicant has a meritorious cause or defense, that the particular counsel was necessary to the proper presentation of the cause, and that there was no time or opportunity, to employ other counsel to conduct it.' " *Davis v. Shigley* (1950), 88 Ohio App. 423, 426, 45 O.O. 217, 100 N.E.2d 261, quoting 17 Corpus Juris Secundum 191, Continuances, Section 5.

{¶ 25} When a case has been assigned to a particular attorney who becomes unexpectedly ill on the morning of the trial, it has been held to be an abuse of discretion to overrule a motion for continuance and to require another member of that law firm who is totally unfamiliar with the case to proceed immediately to trial. *Columbus v. Dalton* (Jan. 30, 1979), 10th Dist. No. 78AP–522, 1979 WL 208858. "Trial experts repeatedly and properly stress that preparation is the primary key to excellence in advocacy. If counsel is denied a reasonable opportunity to prepare, prejudice is presumed." Id. Moreover, the court is not justified in denying a continuance merely because a jury has been summoned and is present and that the court has a crowded docket. Id. "When circumstances arise which justify a continuance, a continuance may not be arbitrarily denied based on these considerations." Id.

{¶ 26} In this case, since appellant was acting pro se, he was entitled to the same consideration regarding his illness as a licensed attorney would have been given. Not only did appellant indicate that he was ill and unable to adequately conduct his own defense, he provided documentation that he had seen a physician who had prescribed medications for him. He exhibited signs that the medications were, in fact, affecting his ability to stay awake and to adequately conduct his own defense.

{¶ 27} We recognize the frustration of the trial court in balancing the competing interests of docket control and the swift resolution of the case against appellant's right to counsel. In the absence of evidence to the contrary, a court must presume the validity of a documented physician's diagnosis and treatment. A defendant should not be forced to choose between accepting treatment of prescribed medications and defending himself at trial.

{¶ 28} Consequently, we must presume that the prescribed medications were considered necessary to appellant's mental and physical well-being. Moreover, despite the court's assessment that appellant was adequately representing him-

self, the record clearly indicates that he was sufficiently impaired to prejudice the jury and to prevent a fair trial. Therefore, we conclude that to maintain a fair proceeding, the trial court should have granted appellant's motion for a continuance and its failure to do so was an abuse of discretion. Accordingly, appellant's first assignment of error is well taken.

## REMAINING ASSIGNMENTS OF ERROR ARE MOOT

{¶ 29} Appellant's second and third assignments of error state:

{¶ 30} "The trial court committed prejudicial error by permitting the trial to proceed in the absence of appellant contrary to R.C. 2945.12, Criminal Rule 43(A), Section 10, Article I of the Ohio Constitution and the Due Process Clause of the Fourteenth Amendment.

{¶ 31} "Mr. Packer's conviction for obstruction of justice was not supported by sufficient evidence and [was] against the weight of evidence."

{¶ 32} Appellant's second and third assignments of error are moot.

{¶ 33} The judgment of the Lucas County Court of Common Pleas is reversed, and this case is remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and cause remanded.

PIETRYKOWSKI and SINGER, JJ., concur.